Bradley C. Gage, Esq., S.B. No. 117808
(brad@bradgagelaw.com)
Milad Sadr, Esq., S.B. No. 245080
(milad@bradgagelaw.com)
**BRAD GAGE LAW, APC**
23002 Victory Boulevard
Woodland Hills, California 91367
(818) 340-9252 Fax: (818) 340-9088

Attorneys for Plaintiff,
ALEXANDER MITCHELL

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER MITCHELL,<br><br>        Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, JOSHUA SPORTIELLO, and DOES 1-10, inclusive,<br><br>        Defendants. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>**1. UNREASONABLE SEIZURE OF PERSON - 4th AMENDMENT VIOLATION UNDER 42 USC § 1983**<br>**2. CIVIL BATTERY**<br>**3. NEGLIGENCE**<br>**4. MUNICIPAL LIABILITY**<br>**5. BANE ACT** |

## GENERAL ALLEGATIONS

1. COME NOW, ALEXANDER MITCHELL (hereinafter "PLAINTIFF" or "ALEX"), who demands a jury trial and seeks monetary compensation against all Defendants, as follows:

## VENUE AND JURISDICTION

2. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. Venue is proper in this

- 1 -
COMPLAINT

|   |   |   |
|---|---|---|
| | | Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district. |
| | 3. | Plaintiff ALEXANDER MITCHELL is an individual who resides in the City of Los Angeles. |
| | 4. | Plaintiff is informed and believes, and thereon alleges that, at all relevant times herein, Defendant, CITY OF LOS ANGELES (hereinafter "CITY" or "defendant CITY" or "Defendants"), was a public entity duly organized and existing under the laws of the State of California. |
| | 5. | Defendant JOSHUA SPORTIELLO (hereinafter "SPORTIELLO" or "defendant SPORTIELLO" or "Defendants") is a peace officer working for the City of Los Angeles Police Department ("LAPD"). At all relevant times, SPORTIELLO was acting under color of law within the course and scope of his duties as peace officer for the LAPD. SPORTIELLO was acting with the complete authority and ratification of his principal, Defendant CITY. |
| | 6. | DOES 1-3 are peace officers working for the City of Los Angeles Police Department ("LAPD"). At all relevant times, DOES 1-3 were acting under color of law within the course and scope of their duties as peace officers for the LAPD. DOES 1-3 were acting with the complete authority and ratification of their principal, Defendant CITY. |
| | 7. | Defendants DOES 4-8 are managerial, supervisorial, and policymaking employees of the LAPD, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the LAPD. DOES 4-8 were acting with complete authority and ratification of their principal, Defendant CITY. |
| | 8. | On information and belief, DOES 1-10 were residents of the County of Los Angeles and the Central District. |

9. In doing the acts and failing and omitting to act as hereinafter described, Defendants SPORTIELLO and DOES 1-3 were acting on the implied and actual permission and consent of Defendants DOES 1-10 and the CITY.

10. The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 1-10, inclusive, are unknown to Plaintiff, who otherwise sue these Defendants by such fictitious names. Plaintiff will seek leave to amend his complaint to show the true names and capacity of these Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

11. At all times mentioned herein, each and every defendant was the co-conspirator with, and/or agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

12. All of the acts complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained of herein.

13. DOES 1-10 are sued in their individual capacity as well as representative capacities.

14. On or about August 16, 2024, Plaintiff filed comprehensive and timely claim for damages with the CITY pursuant to applicable sections of the California Government Code. A true and correct copy of the claim is attached hereto as Ex. "1". On or about August 22, 2024, Plaintiff filed a supplemental claim for damages with the CITY pursuant to applicable sections of the California Government Code. A true and correct copy of the

claim is attached hereto as Ex. "2".

## FACTUAL ALLEGATIONS

15. On or about July 28, 2024, ALEX, an unarmed Black man, was sitting in his parked car on a residential street near the intersection of E. 113th Street and Graham Avenue in the City of Los Angeles.

16. Suddenly, two LAPD officers (including defendant SPORTIELLO) approached ALEX, claiming he was double parked, which is an infraction.

17. SPORTIELLO directed ALEX to roll his windows down. ALEX complied.

18. Then, without consent or justification, SPORTIELLO opened Alex's driver's door.

19. ALEX asked what was going on, explained that he was not on probation or parole, and asked why SPORTIELLO opened his door.

20. Despite Alex's compliance and calm responses to SPORTIELLO's questions, SPORTIELLO falsely stated that he opened ALEX's door because ALEX was "ignoring" him.

21. SPORTIELLO, again without justification, pushed ALEX against his vehicle and asked if ALEX was armed. Based on ALEX's clothing (t-shirt and shorts), officers visually knew ALEX was unarmed.

22. ALEX responded that he was not armed, and officers proceeded to pat him down. No weapons were found.

23. ALEX continued to explain he was not on probation or parole and asked why officers were restraining him.

24. SPORTIELLO, without justification, attempted to handcuff ALEX.

25. Suddenly, SPORTIELLO punched ALEX in the face while the other officer did nothing to intervene, in violation of the LAPD duty-to-intervene policy. Yet, the other officer did not hit or assault ALEX.

26. More officers arrived on the scene and ALEX pleaded with them to get SPORTIELLO away from him. At one point, SPORTIELLO (upon information and belief, the same officer told ALEX, "I can pull anyone out [of their car] for any reason, learn your laws."

27. Officers continued to injure ALEX, who was still in handcuffs, including taking him to the ground multiple times.

28. ALEX told officers, "I can't breathe." While ALEX was on the ground, officers hogtied him. ALEX continued to tell officers, "I can't breath," and "I'm ready to pass out."

29. Nonetheless, officers continued to restrain ALEX on the ground–still handcuffed and hogtied.

30. At one point, ALEX was lying on the ground unconscious, handcuffed and hogtied.

31. An officer is heard telling ALEX, "you gotta wake up," as he tries to jostle him awake. Another officer directs the officers holding down ALEX to sit him up.

32. Officers placed the still-limp, handcuffed, and hogtied ALEX in a seated position as they continued to tell him to wake up. At this point, paramedics were on site but, based on information and belief, they were prevented from assessing ALEX until after he regained consciousness.

33. ALEX regained consciousness and paramedics brought over a gurney. Officers instructed ALEX–who was still hogtied and handcuffed with his hands behind his back–to get on the gurney as ALEX explained that he couldn't without assistance.

34. Once officers had ALEX on the gurney, they connected his handcuffs to it. ALEX was taken to the hospital where he was treated for his injuries.

35. To cover up the use of force, officers charged ALEX with obstruction/resisting in violation of Penal Code section 148(A)(1).

36. On information and belief, prosecutors declined to file any charges against ALEX.

# FIRST CLAIM FOR RELIEF
# FOR UNREASONABLE SEIZURE OF PERSON (42 U.S.C. § 1983)
# BY PLAINTIFF AGAINST DEFENDANT SPORTIELLO & DOES 1-3

37. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if realleged herein.

38. Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances.

39. As alleged in detail herein, on or about July 28, 2024, SPORTIELLO struck ALEX without provocation, good cause, or any legal justification.
    a. SPORTIELLO was attempting to arrest ALEX for an infraction.
    b. SPORTIELLO lacked reasonable suspicion for detention or search.
    c. SPORTIELLO lacked probable cause for an arrest.
    d. ALEX was unarmed.
    e. ALEX was not resisting officers.
    f. ALEX did not pose a danger to SPORTIELLO or anyone else.
    g. SPORTIELLO failed to utilize alternative measures readily available to him.
    h. SPORTIELLO's partner did not utilize for against ALEX.

40. Further, SPORTIELLO and DOES 1-3 violated ALEX's Fourth Amendment rights by unlawfully and unreasonably detaining, handcuffing, arresting and imprisoning him without reasonable suspicion or probable cause.

41. Moreover, SPORTIELLO and DOES 1-3 violated ALEX's Fourth Amendment rights by unlawfully and unreasonably seizing his vehicle

absent a valid caretaking purpose.

42. Additionally, SPORTIELLO and DOES 1-3 violated ALEX's Fourth Amendment rights by unlawfully and unreasonably searching him and/or his property without a warrant or reasonable suspicion.

43. ALEX was wrongfully seized by Defendants.

44. In doing the things described herein, said defendants acted specifically with the intent to deprive all class members of their constitutional rights under the Fourth Amendment to be free from unreasonable seizures including unreasonable, excessive force.

45. As a direct result of the conduct of defendants, Plaintiff has suffered economic and non economic damages in a sum according to proof at time of trial, and in excess of the minimum jurisdiction of this court.

46. The damages that plaintiffs suffered from also include, but are not limited to, past, present and/or future medical, psychological, psychiatric and/or hospital bills and expenses for treatment for pain, suffering, emotional distress and other injuries caused by the conduct of defendants and each of them. General (non economic) damages are also sought for emotional distress, grief, anger, fear, trepidation, and chagrin, in a sum according to proof and in excess of the minimum jurisdiction of this court as well as for the loss of the use of money, pre and post judgment interest, litigation costs, attorneys' fees, civil penalties and fines as allowed by law, and such other damages set out during trial.

47. The aforementioned acts of said defendants were willful, wanton, malicious and oppressive and said misconduct shocks the conscience thereby justifying the awarding of exemplary and punitive damages as to all non-municipal defendants.

## SECOND CLAIM FOR RELIEF
## FOR CIVIL BATTERY
## BY PLAINTIFF
## AGAINST SPORTIELLO

48. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if re-alleged herein.

49. Pursuant to Cal. Government Code §§ 815.2, 815.3, Defendant CITY is liable for the acts and/or omissions of Defendant SPORTIELLO committed in the course and scope of employment.

50. As alleged in detail herein, SPORTIELLO struck ALEX without provocation, good cause, or any legal justification. This intentional act was harmful and offensive to ALEX who did not consent to the hitting.

51. As a direct result of the conduct of defendants, Plaintiff has suffered economic and non economic damages in a sum according to proof at time of trial, and in excess of the minimum jurisdiction of this court.

52. The damages that plaintiffs suffered from also include, but are not limited to economic damages including without limitation, loss of past, present and/or future medical, psychological, psychiatric and/or hospital bills and expenses for treatment for pain, suffering, emotional distress and other injuries caused by the conduct of defendants and each of them. Non-economic or general damages are also sought for all such damages allowed by law, which include without limitation, emotional distress, grief, anger, fear, trepidation, and chagrin, loss of consortium, loss of companionship, care, love and affection in a sum according to proof and in excess of the minimum jurisdiction of this court as well as for the loss of the use of money, pre and post judgment interest, litigation costs, attorneys' fees and such other damages set out during trial.

53. The aforementioned acts of said defendants were willful, wanton, malicious and oppressive and said misconduct shocks the conscience thereby justifying the awarding of exemplary and punitive damages as to all non-municipal defendants.

## THIRD CLAIM FOR RELIEF
## FOR NEGLIGENCE
## BY PLAINTIFF
## AGAINST ALL DEFENDANTS

54. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if realleged herein.

55. The CITY is vicariously liable for the wrongful acts of Defendants DOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the course and scope of the employment if the employee's act would subject him or her to liability.

56. Police officers, including Defendants SPORTIELLO and DOES 1-10, have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and not using any force unless necessary.

57. Defendants SPORTIELLO and DOES 1-10 breached this duty of care. The actions and inactions of Defendants SPORTIELLO and DOES 1-10 were negligent and reckless, including but not limited to:

   a. the failure to properly and adequately assess the need to use force against ALEX;
   b. the negligent tactics and handling of the situation with ALEX;
   c. the negligent use of force against ALEX;
   d. the failure to provide prompt medical care to ALEX;

e. the use of force upon ALEX after he was hit;

f. the failure to properly train and supervise employees, both professional and non-professional, including officers, with respect to the use of force;

g. the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of ALEX;

h. ratification of prior acts of excessive force, or fabrication of evidence; and

i. the negligent communication of information during the incident.

58. As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, ALEX suffered general and special damages.

**FOURTH CLAIM FOR RELIEF**
**MUNICIPAL LIABILITY FOR VIOLATION**
**OF CONSTITUTIONAL RIGHTS (MONELL LIABILITY)**
**BY PLAINTIFF AGAINST DEFENDANT**
**CITY OF LOS ANGELES**

59. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if re-alleged herein.

60. This action is brought pursuant to 42 U.S.C. §1983 for violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments.

61. From March 1, 2024, to November 8, 2024, the interim Chief of Police Dominic Choi was the police chief for the City of Los Angeles, and thus, final policymaker. Beginning November 8, 2024, Chief of Police Jim McDonnell became the police chief for the City of Los Angeles, and thus, final policymaker.

62. Chiefs of Police exercised control and management over the City's Police

Department and was the final policymakers for Defendants.

63. The police chief promulgated policies wherein police officers were ordered and encouraged to stop, detain, arrest, forcefully seize, and/or prosecute members of our community. Defendants implemented policies, procedures and practices that deprived the decedent of his rights under the laws of the United States and the United States Constitution.

64. Defendants implemented an express policy, custom, or widespread practice of targeting people for excessive force, rather than engaging in constitutional policing. The defendants had deliberate indifference to the violations of constitutional rights for people. Defendants had a policy to violate Federal Law and the US Constitution by deprivation of equal protection, substantive and procedural due process rights and illegal searches and seizures.

65. At all relevant times herein, plaintiffs suffered constitutional deprivations by Defendants implementing the unconstitutional policies of the defendants.

66. The Chief of Police ratified the unconstitutional actions of subordinates by continually rewarding officers for unconstitutional conduct through awards, positive evaluations, better assignments, promotions, and increased income/overtime. Thus, the policy, practice and custom of defendants resulted in violating the rights of people to be free from violating equal protection, unreasonable seizures, unlawful arrests, and excessive force. Thereafter in violation of Plaintiffs' due process rights Defendants proceeded to falsify evidence and submit false police reports as well as to delay medical treatment so that the decedent would die.

67. At the time of these constitutional violations, defendant CITY had policies in place and had ratified customs and practices which permitted and encouraged their police officers to violate the US Constitution.

68. Said policies, customs and practices also called for the City and its Police Department not to discipline, prosecute, or objectively or independently investigate known incidents and complaints of unconstitutional violations of the rights of individuals' under the Fourth and Fourteenth Amendments to the U.S. Constitution. These violations were exacerbated by defendants lack of properly training its officers in constitutional policing.

69. Defendant CITY was aware of and deliberately indifferent to a pervasive and widespread pattern and practice within the Police Department to violate the rights of individuals' rights under the Fourth and Fourteenth Amendments to the U.S. Constitution. Said defendants failed to take any reasonable measures to correct this pattern and practice and as a result ratified the actions, and Defendants have been deliberately indifferent to the civil rights violations which resulted in death to the decedent.

70. Said customs and practices called for said defendants, by means of inaction and coverup, to encourage an atmosphere of lawlessness within the police department and to encourage their police officers to believe that engaging in illegal searches, seizures, due process violations and violations of Equal Protection was permissible, and that such conduct would be overlooked or would not result in any discipline for Defendants employees violating the civil rights of citizens demonstrating ratification of these customs and practices.

71. Said policies, customs and practices of said Defendants and each of them evidenced a deliberate indifference to the violations of the constitutional rights of Plaintiffs. This indifference was manifested by the failure to change, correct, revoke, or rescind or otherwise address said customs and practices in light of prior knowledge by said defendants and their subordinate policymakers of indistinguishably similar incidents of unjustified, unreasonable and unlawful arrests, falsification of evidence

and police reports, excessive force and other constitutional violations against citizens.

72. Defendants and each of them demonstrated a deliberate indifference to the civil rights of Plaintiffs, as further evidenced by defendants ignoring the history and pattern of prior civil lawsuits alleging civil rights violations, similar to those alleged herein, arising from such misconduct and the related payment of judgments or settlements of such suits, including those alleging improper shootings and killings without justification.

73. Deliberate indifference is also evidenced by an absence of or by maintenance of an inadequate system of tort claims tracking and by maintaining an inadequate system of officer discipline and independent and objective investigation by the City and its Police Department which failed to identify and investigate instances of false and unlawful arrests, excessive force, falsification of evidence, denial of equal protection and other acts of wrong doing towards individuals.

74. Deliberate indifference to the civil rights of victims of the Defendants' unlawful arrests and falsified evidence was also evidenced by the failure of said defendants to adequately train and more closely supervise or retrain officers and/or discipline or recommend prosecution of those officers who engaged in unconstitutional actions towards plaintiffs.

75. Other systemic deficiencies of said defendants which indicated, and continue to indicate, a deliberate indifference to the violations of the civil rights by the officers of the Defendants towards plaintiffs include unjustified killing, shooting and issuance of public statements exonerating officers involved in such incidents prior to the completion of investigations of wrongful arrests or that are contradicted by actual evidence.

76. Said defendants also maintained a system of grossly inadequate training pertaining to the lawful making of arrests, police ethics, the law pertaining

to searches and seizures, testifying in trial and perjury, the collection of evidence, and the preparation of police reports regarding the arrests of, injuries to and killing of members of the community.

77. The foregoing acts, omissions, and systemic deficiencies are practices and customs of said defendants as such caused, permitted and/or allowed under official sanction Defendants intentionally overlooked and ignored the rules and laws governing the unconstitutional actions towards members of our community.

78. The foregoing acts, omissions, and systemic deficiencies are practices and customs of said defendants which caused, permitted and/or allowed under official sanction said police officer defendants to believe that unconstitutional arrests would not result in any discipline of them.

79. Plaintiffs are informed and believe that, unless restrained and enjoined by this court, defendant City will continue with its unconstitutional policy towards members of our community.  It is extremely likely that defendants will continue with such unconstitutional violations.

80. As a direct and legal result of the defendants actions, the plaintiffs were harmed, and are entitled to economic and non economic damages in excess of the minimum jurisdiction of this court, to attorneys fees, litigation costs, fines, penalties, interest and such other relief as the court deems just and proper.

**FIFTH CLAIM FOR RELIEF**
**VIOLATION OF THE BANE ACT BY PLAINTIFF**
**AGAINST ALL DEFENDANTS**

81. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if realleged herein.

82. Defendants acted violently against Plaintiff to prevent him from exercising his rights under federal and state laws, e.g., freedom of bodily integrity,

freedom from unlawful seizure, freedom from unlawful restraint on movement/liberty.

83. Defendants intended to deprive the decedent of his enjoyment of the interests protected by federal and state laws.

84. Plaintiff was harmed herein.

85. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

86. As a direct result of the conduct of defendants, Plaintiff has suffered with economic and non economic damages in a sum according to proof at time of trial, and in excess of the minimum jurisdiction of this court.

87. The damages that plaintiff suffered from also include, but are not limited to, past, present and/or future medical, psychological, psychiatric and/or hospital bills and expenses for treatment for pain, suffering, emotional distress and other injuries caused by the conduct of defendants and each of them. General damages are also sought for emotional distress, grief, anger, fear, trepidation, and chagrin, in a sum according to proof and in excess of the minimum jurisdiction of this court as well as for the loss of the use of money, pre and post judgment interest, litigation costs, attorneys' fees and such other damages set out during trial.

88. The aforementioned acts of said defendants were willful, wanton, malicious and oppressive and said misconduct shocks the conscience thereby justifying the awarding of exemplary and punitive damages as to all non-municipal defendants. NO punitive damages are sought against the CITY.

WHEREFORE, Plaintiff prays for the following:

    1.    Compensation for both economic and non-economic damages suffered and to be suffered;

    2.    Legal and other expenses incurred by Plaintiff;

3. Compensatory damages and nominal damages caused by deprivation of Plaintiff's constitutional rights;

4. Litigation costs;

5. Attorneys' fees, as allowed by statute;

6. Interest;

7. Civil Penalties as allowed by law.

8. Punitive damages (against the non-municipal Defendants only);

9. Any other relief or damages allowed by law, or statutes not set out above, and such further relief as this Court deems just and proper at conclusion of trial.

Dated: December 11, 2024

Respectfully Submitted,
BRAD GAGE LAW, APC

By: /s/ Milad Sadr
Bradley C. Gage
Milad Sadr
Attorneys for Plaintiff